Mr. Marino, are you ready to proceed? Yes, sir. The record would reflect that we did send out a request that you be prepared to discuss several cases. I thank you for that. I'd just like to reserve three minutes for rebuttal. Could you raise the mic again? I'll be raising the mic, yeah. And you have three minutes for rebuttal. I'm a low talker. This case arises before the court as a result of some money that was interpled to the lower court by an insurance company. And the parties in this case is three or three. We are well aware of that. Okay. Yes. Let's get to the issue. It's a very limited, narrow issue of law. Yeah. I mean, I've had the benefit of the court really doing my own research and studying four of the cases around the court. And I just think this issue is below the level of debate. I think the lower court made the wrong decision for reasons I can't understand. It moves me out of my seat when I read his opinion. Well, he did say, you know, the mortgagor's interest is cut off by foreclosure. And there's something to be said for that. I mean, that is in the technical sense correct. I would assume you would say when there are insurance proceeds from before that time. I think it's a more limited issue to decide. The relationship between the debtor and the bank is contractual. And that relationship is extinguished once the debt is satisfied. Well, doesn't it depend on when the loss happens, whether before or after the foreclosure? Exactly. And when the loss happens, it gives the bank, the mortgagee, the choice of how to decide to satisfy the debt. In the event that the loss occurs before foreclosure, the bank then has a choice. They can either choose to accept insurance proceeds to satisfy the debt or they can choose foreclosure. Either way, the debt can be satisfied. This bank chose foreclosure. The vandals or the loss that was covered by the insurance occurred prior to foreclosure. What if they hadn't moved for deficiency judgment? What would have happened then? Then they would have been entitled only to foreclosure. Because if they didn't move for deficiency judgment, foreclosure satisfies the debt. But the bank... And it would have gotten its loss twice, right? Isn't that what the Laurel case... Yeah, the bank would have been unjustly rich. Exactly what's happening here. Once foreclosure occurs, the debt is satisfied. No, it isn't. Sure it is. No. No, in fact, they got the 30-whatever-thousand after the fact to satisfy the debt. Let me finish. Unless they file for deficiency. No, that's wrong. That's wrong. That's the law. Under Pennsylvania law, if they file for deficiency, they're entitled to determine if the debt has not been satisfied by the value of taking the property. But that doesn't have the satisfaction of the debt. That has to do with whether they can then pursue the debtor for the personal assets. You can go back to the personal assets of the debtor to satisfy the deficiency. Foreclosure doesn't satisfy the debt. Well, it does away with the lien and the bank owes the money, but it still has the debt. That's why it got the 30-some-thousand dollars, because after the deficiency judgment action was brought, it was determined that there's still an amount of debt outstanding, correct? Yes, I agree with you. Okay. But the bank can only recover that value. They're not entitled to a further value. They're entitled to the property plus the deficiency. In this case, it was 37-some-odd dollars. That's what the bank's entitled to. Once that value is satisfied, the bank's interest, if the bank's right to recover further proceeds, is extinguished. Well, how does it get the right to recover from the insurance company then? From that which? It has the right to recover from the insurance company to the extent of the deficiency judgment. And it did that? And it did that. And the deficiency was determined to be 37-some-thousand dollars. Okay. So why should it now get the – isn't that what they're fighting over right now? Yes. The bank wants the property and all of the insurance proceeds. And 33-some-thousand dollars. And it previously got the property in the foreclosure. Yes. Okay. So it's been satisfied, as Judge Rendell said. Yes. I represent the property owner. I represent 33-some-thousand dollars. He's agreeing with us. You're agreeing with us. Okay. Obviously, the bank is entitled to the deficiency judgment. But if they had not brought a deficiency judgment action, then their debt would still be the entire debt, and they would have been entitled to the rest of the insurance proceeds, would they not? No. Their debt is satisfied with regard to foreclosure unless they file for deficiency judgment. And the point is they did file for a deficiency judgment? Properly so. And they can recover that deficiency judgment from the insurance proceeds that otherwise would go to the owner of the property. Yes. Exactly. And the owner gets the excess. Exactly. Because they paid the premium, and they satisfied their debt to the insurance company. I mean, they satisfied their debt to the bank. Mortgage loan. Mortgage loan. Okay. Because it's a very restrictive relationship, and the bank should not be entitled to receive more than the debt. And Pennsylvania law suggests that in all the cases around the country. I had the benefit of reviewing based on the court's direction. Thanks to Judge Slover's research. Yes. One of these cases is almost exactly important even with regard to the value that was claimed. I mean, we have cases around the country in different circuits. In Michigan, Missouri, Florida. Would Pennsylvania law be any different? Well, you were not going to argue that. Your colleague might argue that. Yeah. But Pennsylvania law is aligned with all the other circuits. Yeah. Even the Laurel National Bank case, which everybody relies on. That's the pivotal case. Specifically says it toward the end. That's the pivotal case, yeah. That's all I have. If the court has any questions? Any questions? No, thank you. Any other questions? Thank you very much. Thank you. Here comes somebody to say something different. Excuse me just one second. Very well. Take your time. Okay. Let's forget the case law for a minute. Assuming you got the property worth what it was determined to be worth in the deficiency judgment action, and then you got the other $30-some-thousand, how is it that, and your debt is satisfied, how is it you would be entitled to an additional $92,000? Is that not a windfall? No, it isn't, Your Honor. May it please the court. My name is Jonathan Bart. I am. I thank you for this. I'm Lawrence Goldman in Spitzer on behalf of Investors Trust. I'm going to come to you a little bit differently than the district court did. The district court relied on the dictum in Laurel that upon termination of a foreclosure, the mortgage interest is extinguished, and, therefore, as a matter of policy, as between the two, it would be the lender who deserves the money. I agree with the policy reasons but have to come to it differently. You have to remember that the Laurel case involved a battle between the insurer and the lender. The borrower was not a party to the Laurel case, and thus the statements regarding loss before foreclosure are pure dictum, and they don't take into account the significant issue here, which is the effect of the Deficiency Judgment Act. Well, would you answer my question? Your debt was satisfied. Your collateral was valued, and you had a deficiency, and you got paid that, your bank. How is it you would be entitled to the $92,000? Is that not a windfall? It isn't a windfall because the Deficiency Judgment Act only applies to personal assets, which is the way you know it. If you hadn't brought a Deficiency Judgment Act, you would have been entitled to those insurance proceeds because you had the larger debt. No, the Deficiency Judgment Act had no effect whatsoever on the bank's entitlement to collateral. It's collateral. That's the holding of the Pennsylvania Supreme Court in Horrible, which is directly on point here and was followed by the Eastern District in the Option 1 case. Those two cases are what control this. What the Pennsylvania Supreme Court held in Horrible is that the Deficiency Judgment Act does not apply to an attempt by a bank to foreclose on additional collateral security in addition to a piece of property. In that case, it was a CD that was closed to the bank. But that's a different action. That's a different issue. The issue there is that under the Deficiency Judgment Act, unless you have brought a Deficiency Judgment Act, you are barred from proceeding against the personal assets of the debtor. Correct. You are barred. Correct. Okay, so if you do not bring a Deficiency Judgment Act, you are not barred from proceeding against insurance proceeds because under those cases they are not deemed to be personal assets of the debtor. But we have a different fact pattern here. We have a Deficiency Judgment Action that was brought that by virtue of the statute itself, it says the debt is satisfied to the extent of the value determined in the Deficiency Judgment Act. I believe Your Honor is misreading the Horrible case. What the Horrible case said is that by not following the Deficiency Judgment Act, the mortgage was satisfied. Notwithstanding the fact that the mortgage was satisfied, the bank was permitted to go against collateral security because collateral security is not a personal asset of the debtor. But here you did proceed with a Deficiency Judgment Action, and that's a distinguishing factor. We did proceed, which only allows us to proceed against personal assets. Well, how do you get the $37,000 then? You're saying it's not personal assets. The $37,000 was the deficiency. We can go after personal assets to the extent of $37,000. We can go after the full amount of our collateral security. The full amount of your debt. The debt, though, by contract is determined as of the day before the sheriff's sale, not by the Deficiency Judgment Act. If you look at Horrible, if you look at Option 1, they both hold that they don't apply to, in one case, collateral security in the form of a CD, and in Option 1, to collateral security in terms of insurance proceeds. The insurance proceeds vest according to the mortgage contract at the time of the loss. It's a present right which vests upon the loss. So the bank had a collateral security interest in the insurance proceeds. Remember, this is the same. Because they didn't have a Deficiency Judgment Act. In both of those cases, in either of those cases, was a Deficiency Judgment Act filed? No, but the effect of it not being filed was that the mortgage was satisfied. The rights, therefore, under the mortgage would be extinguished. When a mortgage is satisfied, the mortgage contract ends. That's not what the Deficiency Judgment Act says. I believe Your Honor is misreading Horrible and Option 1. I don't believe they are distinguishable. I mean, the question, and let me address the four cases, because I think that Your Honor cited and asked for distinction. There were, I mean, of course, none of them arises under Pennsylvania law. The first case, the Western Employers Insurance case from Illinois, had no clause similar to Paragraph 5 here, which stated, by contract, we're entitled to insurance proceeds on the basis of the debt as of the judgment date and not thereafter. In other words, as of the judgment, we had a $173,000 judgment. So we were entitled to insurance proceeds up to $173,000. But Emmons has that language, and so does Fire Insurance Exchange. Okay. Emmons, yes. And remember, all four of these cases, the real significant difference is all four of these cases involved actual bidding at a sheriff's cell, where in three of the four, they were actually satisfied by cash payments or the lender bidding in the entire amount of the debt. One of the cases, I believe it was Fire Insurance, it was $130,000 out of $143,000. So there was actual payment. It wasn't as in the Deficiency Judgment Act, where there's no payment at all. It's just a prediction of what might, you know, what the real estate might be worth. So there's a major distinction. Let me go back to the Deficiency Judgment Act. Okay. After the determination, this is what the statute says. After the determination by a court of the fair market value of the property sold, the debtor shall be released and discharged of such liability to the judgment creditor to the extent of the fair market value as said property determined by the court. And thereupon, the judgment creditor may proceed by appropriate proceedings to collect the balance of the debt. Release and discharge. And the same thing happens if you don't file a fair market value proceeding. No, I don't know what statute. Under the statute, if you don't file a fair market value proceeding, the mortgage is deemed satisfied and extinguished. That's the plain terms of the statute. Let me read back to you the discussion of Horble in the Option 1 case. In Horble v. Moxham National Bank, the Pennsylvania Supreme Court decided whether a certificate of deposit that was assigned to the bank by the mortgage or as additional security for the loan could be liquidated and applied to the remaining debt on a mortgage after the bank bought the property for a nominal sum at the sheriff's sale and neglected to petition to fix the fair market value of the house. In Horble, the Pennsylvania Supreme Court held that the bank could liquidate the CD and apply the proceeds to the outstanding loan balance, reasoning that the DJA was designed only to protect a debtor's personal assets after the date of the sheriff's sale. The bank became vested in all rights to the CD when the assignment documents were executed, and therefore the CD was not a personal asset of the debtor. Okay, and the same thing would have happened here if you hadn't proceeded with a deficiency judgment action. You could have gone against the entire insurance proceeds because the case law says insurance proceeds, like that certificate of deposit in that case, are not personal assets. Except that case wasn't decided under the Deficiency Judgment Act. The Deficiency Judgment Act has the exact – let's say for a minute that the fair market value of the property did not extinguish – I mean, it did not exceed the amount bid at sheriff's sale. So, in other words, the deficiency was zero. If the deficiency is zero – The fair market value is determined in a deficiency judgment proceeding, not by the bid at the sheriff's sale. That's correct. The court could find that the deficiency was zero. If in a deficiency judgment action, actually. Right. But if the deficiency is zero, there's no difference between that and what happens when you fail – The deficiency is, by operation of law, zero when you fail to file a petition to fix fair market value. And your mortgage is extinguished, and you have no right to go after personal assets. You're trying to basically say that the penalty for – in other words, there's an advantage for not filing a petition to fix fair market value, which isn't what the statute provides. If you don't file, then you lose the right. Your mortgage is extinguished. What Horpel says – Well, you lose the right to go against personal assets. But there is this loophole that if they're not deemed personal assets, you can proceed against them. You could have gotten the whole amount here if you hadn't proceeded with a deficiency judgment action. You're reading what Horpel doesn't say. All right. We can't agree. I did this for 20 years, but that's okay. Okay. The question for the court is whether the insurance proceeds were personal assets of the debtor. If they were previously assigned, as the Florida case that you cited says, it says it's a present assignment that vests upon the time of the loss. If it is part of the collateral, then the deficiency judgment act according to Horpel doesn't apply. Therefore, it would have no effect whatsoever on the right to pursue the additional collateral. Let's not forget this is a claim for unjust enrichment, which the debtor made absolutely no showing that the bank would be unjustly enriched. You don't get the insurance proceeds beyond the amount of the sums secured by the security instrument. That's correct, the 173, but we didn't. You did. You got the value of the property. We determined the deficiency judgment action. We didn't get that. The deficiency judgment action would just allow us the right to pursue 37,000 of their personal assets. But it says the debtor's release to the extent of the fair market value. What is it that it says? Deficiency judgment act 42 p.m. WCS 80-103. As to its personal assets. It doesn't. The insurance proceeds are not personal assets. That's what Horpel and option one says. I just beg your honor to read those two cases and tell me that I'm wrong. You can understand why it seems unseemly. That's what I'm trying to address now quickly because I know my time is running out. The borrowers in this case stole $140,000 from a claim in 2008. They allowed the, if you look at the record. Oh, yeah, but that has nothing to do with this. It does have something. We're talking about unjust enrichment. The court below held that the bank was entitled to recover that sum from Lexington. And that wasn't appealed, but that's part of the record. They were required to give notice of a loss. There was a fire. They didn't give notice. They collected and signed for checks that were paid. It wasn't a fire. Wasn't it vandalism? Well, there was a fire, and then there were two losses. 2008, there was a fire. They made a claim, didn't give notice to the bank, and took $140,000 that should have been payable to the bank under the mortgage instrument and the loss payable clause. Then in 2010, there was vandalism. And there was a settlement for $205,000, some of which was paid, and $130,000 of which was then deposited into court. And that, as to that, they're making a claim. They've already recovered more money than they put out personally for this property. They haven't been, the bank wouldn't be unjustly enriched. The bank took a tremendous loss on this. The fair market value proceeding is a prediction of what it might have been. It's an empty shell in North Philadelphia. And the bank should have gotten $140,000 from 2008, wasn't told about it, and they absconded with the money, which the court below said we should have gotten, and that Lexington owed the money because it wasn't paid to us. But they took it. And then in 2010, they're making a claim that they deserve another $90,000, which is more than they borrowed. It's more than they put down. They suffer, they have suffered no loss, which of course is an element required for unjust enrichment, which is what they're claiming. But it's value that was lost to them when they were the owner of the property. In other words, they thought they had a property worth $400,000, and $200,000 worth of it goes, you know, through this taking of all this property. And then they have a property worth only $200,000. Well, they left the bank with over $100,000 in taxes and fees they hadn't paid, which had to be resolved at the sheriff's sale and thereafter. We don't know any of that. It's all part of the record, Your Honor. All right. And so obviously they have to show their entitlement to us. Excuse me, do you offer proof of the deficiency judgment action as to the fact that the property is worth next to nothing? Yes, but I'm not before you. I would like to be able to appeal the deficiency judgment decision. They put on an expert who said that it would be worth $250,000 in four years. It was a future prediction. The court accepted it. Unfortunately, I cannot appeal under the Rooker-Feldman doctrine to that determination. But the bank never got any money. The bank had to pay over $100,000 in taxes that they hadn't paid, and $140,000 of insurance proceeds that was supposed to go to repair the fire damage was just put into their own pockets. They had never shown any entitlement to relief under an unjust enrichment theory. Thank you. Thank you. Mr. Moreno, is there some rebuttal time? I guess he's entitled. Mr. Matt. Wait until you get to the microphone. Yeah, we can't hear you. Maybe I'm more familiar with the facts of this case than counsel, but there was never a fire. This property was bought with the purposes, it's in Kensington. It's a huge property. It spans an entire city block with intent to develop a juvenile justice center. They don't know where Kensington is. I do. Well, the intent was there was a need for a secure setting for juvenile justice center. That was the intention. There was a flood. A cracked pipe occurred because its gravity fed the fire extinguishers, and there was a flood, never a fire. The money was used to fix the floors. Then somebody broke in and stole all of the plumbing supplies and vandalized the property. There was another policy. Now we have there was a flood damage, then there was all of the tooletry was taken out, and then someone else broke in and took every piece of electric out. This company with good intentions is the victim here. So I don't know where counsel presents these facts. I mean, the simplification. Well, we don't have to decide that. I don't think we have to decide that. I thought we had a straightforward session. It's a simple issue of law, and it's contractually bound. You have to apply the Deficiency Judgment Act. The debt has been decided by Judge Seisler is $37,000. The bank is entitled to it. They should receive that. But as all the cases that the court has cited and I've reviewed, the bank is not entitled to receive a value that exceeds their debt. That would be unjustly, they would be unjustly enriched, and all of the circuit courts agree to that proposition, and as does Pennsylvania law. Thank you. Thank you very much. Pennsylvania law, as set forth in the law, is the same as the law of the four cases that we gave you. The only difference in the law case, when you analyze the facts, in that case, the foreclosure occurred before the loss. In our case, the foreclosure occurs after the loss, and that gives the bank more options, and they chose an option to foreclose. So they're not entitled to the proceeds of insurance beyond the Deficiency Judgment. Thank you. Thank you very much. We'll take the case under advisement, and we now stand adjourned.